Name *Bruce Feaster* SDCC
*P.O. Box 208*
*Indian Springs, NV 89070*
*821021*
Prison Number

FILED ✓
ENTERED
_____ RECEIVED
_____ SERVED ON
COUNSEL/PARTIES OF RECORD

APR 10 2009

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

*Bruce Feaster*,
          Plaintiff,

vs.

*LVMPD*,

Officer J. Ballinger P# 12900,

Officer E. Prunchak P# 6180,

Officer D. Green P# 6881,

                    ,
          Defendant(s).

Amended

CASE NO. *2:09 CV 303*
(To be supplied by the Clerk)

## CIVIL RIGHTS COMPLAINT
## PURSUANT TO
## 42 U.S.C. § 1983

## A. JURISDICTION

1) This complaint alleges that the civil rights of Plaintiff, *Bruce Feaster*,
(Print Plaintiff's name)

who presently resides at *S.D.C.C.*, were

violated by the actions of the below named individuals which were directed against

Plaintiff at *4950 Imperial, L.V., NV* on the following dates
(institution/city where violation occurred)

*4th amend 6/12/08* , *14th amend 6/12/08* , and _____.
(Count I)                    (Count II)                    (Count III)

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

2) Defendant _Officer E. Prunchak_____ resides at _____,
       (full name of first defendant)           (address if first defendant)
and is employed as ___L V M P D_____ . This defendant is sued in his/her
            (defendant's position and title, if any)
__X__ individual __X__ official capacity. (Check one or both).  Explain how this defendant was
acting

under color of law: _He was acting aggressive and coercive in
his questioning and exceeded the limits of consent_

3) Defendant _Officer J. Ballinger____ resides at _____,
       (full name of first defendant)           (address if first defendant)
and is employed as ____L V M P D_____ . This defendant is sued in his/her
            (defendant's position and title, if any)
__X__ individual __X__ official capacity. (Check one or both).  Explain how this defendant was
acting

under color of law: _He was acting beyound the law of
the consent I gave to search and put me in duress_

4) Defendant _Officer D. Green_____ resides at _____,
       (full name of first defendant)           (address if first defendant)
and is employed as ___L V M P D_____ . This defendant is sued in his/her
            (defendant's position and title, if any)
__X__ individual __X__ official capacity. (Check one or both).  Explain how this defendant was
acting

under color of law: _He helped in the search that went
beyound the limits of a consent._

5) Defendant _____ resides at _____,
       (full name of first defendant)           (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
            (defendant's position and title, if any)
____ individual ____ official capacity. (Check one or both).  Explain how this defendant was
acting

under color of law: _____
_____

2

6) Defendant _____ resides at _____
           (full name of first defendant)

and is employed as _____ . This defendant is sued in his/her
                (defendant's position and title, if any)

___ individual ___ official capacity.  (Check one or both).  Explain how this defendant was
acting

under color of law: _____

_____

_____

7) Jurisdiction is invoked pursuant to 28 U.S.C. § 1343 (a)(3) and 42 U.S.C. § 1983.  If you wish
to assert jurisdiction under different or additional statutes, list them below.

_____

_____

- - - - - - - - - - - - - - - - - - - - - - - - - - -

## B. NATURE OF THE CASE

1)     Briefly state the background of your case.

It's as follows that on June 12, 2008 that I had my 4th amendment of the constitution violated by officers when they went beyound the limits of my consent. (U.S. V. DeMarsh, E.D. Wis. 1973, 360 F.Supp. 132) and (U.S. V. Sanders, E.D. Tex. 1994, 846 F.Supp. 42)

I refused consent several times. It wasn't until I was left in the hot sun and dehydration and threat made me give consent believeing the officers was going to let me go if no drugs and parahinilia was found. (U.S. V. Gray, S.D.W. Va. 2004, 302 F.Supp. 2d 1046) and (Schneckloth V. Bustamonte, U.S. Cal. 1973, 93 S.Ct 2041

- - - - - - - - - - - - - - - - - - - - - - - - - - -

## C. CAUSE OF ACTION

**COUNT I**

The following civil rights has been violated: U.S.C.A 4th amendment of the constitution. Search and Seizure.

Supporting Facts: [Include all fact you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

The police was called to come and investigate a domestic violence and quarrel between my roommate and her ex-boyfriend. I was unrelated to the domestic argument and officers left my house to look for my roommates ex-boyfriend. They came back and put me under arrest and ignored the fact that if I had a warrent in Las Vegas Municipal Court the officers should have took me to jail without unnecessary delay. (U.S. v. Iribe, D. Colo. 1992, 806 F. Supp. 917) (SEE Exhibit 1 last paragraph of second page.) Officers asked if I would let them in the room I was renting and I refused to give consent. Upon further questioning I told them I didn't have the key. My roommate gave them a key and the officers came back out side where they left me in the hot sun to threaten me that they will leave me out in the sun until a warrent can be issued. They told me they was looking for drugs and para, and that if I didn't have any they (cont. next pg)

4A

(Cont. from pg. 4A)

I was never read my right

Officer Prunchak said he would let me go of the delayed warrent if I consented to a search of my room. I refused again. By now more officers were arriving even though the issue in which they was called for was resolved. Officer Prunchak and Ballinger came back out of my home. Officer Prunchak then started to get loud and aggressive demanding that I give consent. By now I was in the sun for two hours and the heat was taking it's toll. I asked for water and was denied. U.S. Cal 1973, 93 S. Ct. 2041, 412 U.S. 218, 36 L. Ed. 2d 854 and U.S. v. Wade, C.A. (Ill) 2005, 400 F. 3d 1019.

I gave consent only after I refused several times and the sun had dehydrated me so bad that I had formed a mild case of dierreah (loose bowels)

Officer Ballinger then filled out a consent to search form for me and I signed the consent. (see exhibit 2) I would like to bring up the fact that the consent to search was filled out improperly. The area in which the crime that officer Ballinger and Prunchak was investigating was left blank. The scope however is clear that officer Ballinger and Prunchak

4B

was to look for narcotics/paraphernalia. which is what I gave consent to search for. Officer Prunchak and Ballinger then entered my room and disregaurded the limits and thereby exceed to go beyound the consent in which I gave. (See Exhibit 2) Both Officer Prunchak and Ballinger wrote in they're discovery they was not concerned with drugs yet they made me sign a consent to search for drugs to gain access to my room. I gave consent in clear teams that officers where to look for drugs and paraphernalia. Officer Prunchak and Ballinger is coersion and duress to cause me to give consent for one thing knowing they was looking for other items. U.S. V. Wuagneux, CA. Fla 1982, 683 F.2d 1343 and People V. Bravo, 738 P.2d 336, 238 cal Rptr. 282, 43 C. 3d. 600 and Canada V. State, 756 P.2d 552, 104 Nev 288. and Smith V. Demosthenes, 734 F. Supp 434.

Officer Green helped with the search that was conducted at my house. The fact being that his name is on my discovery

All this happened on 6-12-08

4C

**COUNT II**

The following civil rights has been violated: _U.S.C.A 14ᵗʰ amendment Due Process of Law._

Supporting Facts: [Include all fact you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

Officer J. Ballinger P# 12900 and Officer E. Prunchak came to my house as stated in (count I) I was by all means coerced while under duress by the hot Las Vegas sun. They came back to my house after the first contact because I had a warrent there was no legitimate need for the search and the 14ᵗʰ amend is in place so that there are certain requirements that must be met. It's important to say that with the warrent they came back to arrest me and failed to take me in to the jurisdiction in which I had the warrent. Officer E. Prunchak and Officer J. Ballinger took it upon themselves to question me and threaten me until I give consent. Everything that lead to the violation of my 4ᵗʰ amendment is also a violation of my 14ᵗʰ. Both officers stated in there own words that they told me they was not concerned with drugs/para. yet they made me sign a consent for drugs/para. They never told me that and that part of the report is a lie.

The following civil rights has been violated: _____

_____

_____

Supporting Facts: [Include all fact you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## D. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1)  Have you filed other actions in state or federal courts involving the **same or similar facts** as involved in this action?  ___ Yes  X No. If your answer is "Yes", describe each lawsuit. (If more than one, describe the others on an additional page following the below outline).

a)   Defendants: _____

b)   Name of court and docket number: _____

c)   Disposition (for example, was the case dismissed , appealed or is it still pending?):

_____

d)   Issues raised: _____

_____

_____

e)   Approximate date it was filed: _____

f)   Approximate date of disposition: _____

2)   Have you filed an action in federal court that was **dismissed because it was determined to be frivolous, malicious, or failed to state a claim upon which relief could be granted?**
___ Yes  ☒ No.  If your answer is "Yes", describe each lawsuit.  (If you had more than three actions dismissed based on the above reasons, describe the others on an additional page following the below outline.)

Lawsuit #1 dismissed as frivolous, malicious, or failed to state a claim:

a)   Defendants: _____

b)   Name of court and case number: _____

c)   The case was dismissed because it was found to be (check one): _____ frivolous ____ malicious or _____ failed to state a claim upon which relief could be granted.

d)   Issues raised: _____

_____

e)   Approximate date it was filed: _____

f)   Approximate date of disposition: _____

Lawsuit #2 dismissed as frivolous, malicious, or failed to state a claim:

a)   Defendants: _____

b)   Name of court and case number: _____

c)   The case was dismissed because it was found to be (check one): _____ frivolous

c)   The case was dismissed because it was found to be (check one): _____ frivolous _____ malicious or _____ failed to state a claim upon which relief could be granted.

d)   Issues raised: _____
_____

e)   Approximate date it was filed: _____

f)   Approximate date of disposition: _____

Lawsuit #3 dismissed as frivolous, malicious, or failed to state a claim:

a)   Defendants: _____.

b)   Name of court and case number: _____.

c)   The case was dismissed because it was found to be (check one): _____ frivolous _____ malicious or _____ failed to state a claim upon which relief could be granted.

d)   Issues raised: _____
_____

e)   Approximate date it was filed: _____

f)   Approximate date of disposition: _____

3)   Have you attempted to resolve the dispute stated in this action by seeking relief from the proper administrative officials, e.g., have you exhausted available administrative grievance procedures? ____ Yes ✗ No. If your answer is "No", did you not attempt administrative relief because the dispute involved the validity of a: (1) ___ disciplinary hearing; (2) ___ state or federal court decision; (3) ___ state or federal law or regulation; (4) ___ parole board decision; or (5) ___ other Violation of constitution amend. If your answer is "Yes", provide the following information. Grievance Number _____. Date and institution where grievance was filed _____.

Response to grievance: _____
_____
_____

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following relief:

seeking monetary damages in the form
of compensation a total of 2.4 million
dollars. Injunctive relief of 2 million
dollars. Punitive damages $5,000 each
defendant.

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** See 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

_____
(Name of Person who prepared or helped prepare this complaint if not Plaintiff)

_____  8262 |
(Signature of Plaintiff)

_____
(Date)

(Additional space if needed; identify what is being continued)

Exhibits

9

Exhibit
# 1

# LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## TEMPORARY CUSTODY RECORD

09012-0700

**Page** 1 **of** 1

**DATE OF ARREST:** 08/12/08  **TIME OF ARREST:** 1100

**I.D. #:** 1220271   **Event #:** 080522-2724

**I.D. ESTAB. BY:** SCOPE

**INTAKE NAME (AKA, ALIAS, ETC.)** Last: FEASTER  First: BRUCE  Middle:

**TRUE NAME** Last: Seaster  First: Bruce  Middle: Edward Jr

**ADDRESS NUMBER & STREET:** 4950 IMPERIAL

**BLDG./APT. #:**

**CITY:** LAS VEGAS  **STATE:** NV  **ZIP:** 89110

**DATE OF BIRTH:** 06/24/77  **RACE:** B  **SEX:** M  **HEIGHT:** 5'7  **WEIGHT:** 150  **HAIR:** BRO  **EYES:** BRO

**SOCIAL SECURITY #:** 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

**Speak English?** ☑ Yes ☐ No  **PLACE OF BIRTH:** LV, NV

**LOCATION OF CRIME (# - Street - City - State - Zip):** 4105 COLORADO LV NV 89104

**Citizen Arrest** Y ☑N

**LOCATION OF ARREST:** 4950 IMPERIAL LV NV 89110

**Sector/Beat:** G4  **PCN #:**

| BKG. CODE | CHARGE ORD / NRS # | M | GM | F | ARR TYPE* | EVENT NUMBER | WARR / NCIC NUMBER | COURT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | LV | JC | DC | OTHER |
| 5506 | BURGLARY NRS: 205.060 $5,000 ✓ | ☐ | ☐ | ☑ | PC | 080522-2724 | | ☐ | ☐ | ☐ | ☐ |
| 5028 | HOME INVASION NRS: 205.067 $3,000 | ☐ | ☐ | ☑ | PC | 080522-2724 | | ☐ | ☑ | ☐ | ☐ |
| 4906 | CONSPIRACY TO COMMIT BURGLARY NRS: 205.060 $1,000 | ☐ | ⊗ | ☐ | PC | 080522-2724 | | ☐ | ☑ | ☐ | ☐ |
| 5517 | POSSESSION OF STOLEN PROPERTY NRS: 205.275 $3,000 | ☐ | ☐ | ☑ | PC | 080522-2724 | | ☐ | ☑ | ☐ | ☐ |
| 5512 | GRAND LARCENY NRS: 205.220 $3,000 | ☐ | ☐ | ☑ | PC | 080522-2724 | | ☐ | ☑ | ☐ | ☐ |
| 5591 | POSSESSION OF CREDIT CARD WITHOUT CONSENT OF THE OWNER NRS: 205.690 $3,000 | ☐ | ☐ | ☑ | PC | 080528-2590 | | ☐ | ☑ | ☐ | ☐ |
| | | | | | | | | ☐ | ☑ | ☐ | ☐ |

**\*ARREST TYPE:** PC – PROBABLE CAUSE   BS – BONDSMAN SURRENDER   BW – BENCH WARRANT   WA – WARRANT   RM – REMAND   GJI – GRAND JURY IND.

**OTHER COURT:**

Arresting Officer's Signature _____ / **A. PACKE** (Print Name) **7477** P# / **LVMPD** Agency

Transporting Officer's Signature S/A (Print Name) P# Agency

**APPROVAL CONTROL # FOR ADDITIONAL CHARGES:**

**Time Stamp at BOOKING**

JUN 12 08 1755

☑ FOR PROBABLE CAUSE/NCIC HIT ARREST SEE PAGE TWO FOR DETAILS.

☐ BENCH WARRANT SERVED ON _____

☐ WARRANT SERVED ON _____

☐ GRAND JURY INDICTMENT SERVED ON _____

TYPE OF I.D. FOR VERIFICATION _____

**FIRST APPEARANCE:** DATE: _____ TIME: _____

**COURT**

☐ JUSTICE

☐ MUNICIPAL

☐ JUVENILE

☐ STANDARD BAIL

☐ O.R. RELEASE

☑ PROBABLE CAUSE

☐ I.A.D.

**JUDGE:** _____

**P #:**

LVMPD 22 (REV. 3-06)   (2) COURT • ORIGINAL

08F12153X - SEASTER, BRUCE

Page 5 of 49

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
# DECLARATION OF ARREST

ID#: __1220271__                          EVENT: __080612-0700__

| TRUE NAME: | DATE OF ARREST: | TIME OF ARREST: |
|---|---|---|
| BRUCE FEASTER | 06/12/08 | 1100 |

OTHER CHARGES RECOMMENDED FOR CONSIDERATION: JUL 3 2008

L9930R

THE UNDERSIGNED MAKES THE FOLLOWING DECLARATIONS SUBJECT TO THE PENALTY FOR PERJURY AND SAYS: That I am a peace officer with the Las Vegas Metropolitan Police Department, Clark County, Nevada, being so employed for a period of 6 YEARS.

That I learned the following facts and circumstances which lead me to believe that BRUCE FEASTER committed (or was committing) the offense of burglary, home invasion, possession of stolen property, conspiracy to commit burglary, at the location of 4103 E. Colorado Ave Las Vegas NV 89104.

That the offense occurred at approximately 1100 hours on the 22nd day of May, 2008.

On 5/22/08 victims Raymond and Marilyn Taylor notified the LVMPD alleging a residential burglary at their home that had occurred earlier that day. According to the victims, numerous items were stolen, including jewelry, electronics, a violin in its case, and hypodermic needles used for insulin injections. LVMPD patrol officers responded to the scene and conducted the initial investigation which was documented on a crime report under event number 080522-2724. After the initial investigation, the case was suspended as all investigative leads were exhausted.

Then, on 6/12/08 LVMPD dispatch received a call from a citizen at 4950 Imperial St. Las Vegas NV 89110. The caller was reporting a verbal domestic quarrel between her and an ex-boyfriend. Officers E. Prunchak P#6180 and J. Ballinger P#12900 were dispatched to the scene. Upon arrival, they made contact with numerous occupants inside the home. All subjects in the home, including Bruce Feaster were identified. Feaster was unrelated to the domestic argument, and Officers Prunchak and Ballinger left the residence to make contact with another party just several blocks away. After leaving the residence, Officers Prunchak and Ballinger received a delayed warrant hit from the Las Vegas Municipal Court for Bruce Feaster. Both officers returned to 4950 Imperial St. to arrest him. They again made contact with Feaster once inside the residence. They placed Feaster under arrest for the warrant and placed him into handcuffs. Officer Prunchak confirmed with Feaster that he rented a room within the residence, and was not the owner of the home. Officer Prunchak noted that the door to Feaster's room was locked with a dead bolt. Officer Prunchak asked Feaster if he had a key for his room. Feaster replied to Officer Prunchak that he had accidently left the key in a friends car the night before. While Officer Prunchak was having this conversation with Feaster, the home owner handed Officer Ballinger Feaster's actual key chain. When Officer Prunchak confronted Feaster with this information, he admitted he had lied about the key. Officer Prunchak asked Feaster if there were any items in his room that he should not have. Feaster admitted to Officer Prunchak that there were possible paraphernalia items in the room. Officer Prunchak assured Feaster that he was not concerned with drug paraphernalia items and

LVMPD374 (Rev. 2/00) - AUTOMATED/WP12

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
**DECLARATION OF ARREST CONTINUATION**
**Page 2**

ID#: __1220271__

EVENT: __080612-0700__

asked Feaster for consent to search his room. Feaster agreed to a search of his room. Feaster had one hand freed and signed a consent to search card prior to the search.

Officers Prunchak and Ballinger then entered into Feaster's room and began to search. As the search progressed, both officers began to find numerous jewelry items. They also observed bags that contained identification cards and credit cards in the name of other people. Much of the jewelry was in drawers from jewelry boxes, however there were no jewelry boxes located in the room. According to Officer Prunchak, it appeared as though someone had just grabbed the drawers as they walked by the jewelry boxes. Both Officers also located various electronics, including an iPod Shuffle, numerous cell phones, computer hard drives, home owner loan documents, several boxes of prescription hypodermic needles bearing the name of Raymond Scott Taylor, checks, wallets, and numerous bags containing the above items. Based on their training and experience, Officers Prunchak and Ballinger believed these items were stolen from other others and was stolen property. Officers also obtained consent from the home owner, Anne Treat for permission to check the rest of the house and curtilage. A violin in a hard case was located in a trailer in the back yard of the residence. Ms. Treat claimed she did not know who owned it and that no one in the home played violin. Officers Prunchak and Ballinger then seized the items from Feaster's room and transported them back to the Northeast Area Command Property Crimes office. Feaster was transported to the Clark County Detention Center pending booking.

A records check was conducted on the name of Raymond Scott Taylor, that was located on the hypodermic needle boxes. I discovered that Mr. Taylor and his wife were the victims of a residential burglary under event 080522-2724. That report listed numerous items, including a violin and its case as stolen. According to the report, the violin was valued at $500. The violin case was valued at $125. 2 horse hair bows used to play the instrument were valued at $200. The boxes of hypodermic needles were valued at $111.96. Finally, a Colibri mens pocket watch was valued at $75. Total amount of stolen property that Feaster was in possession of totaled $1011.96.

Mr. and Mrs. Taylor responded to the office to take custody of their items. They confirmed the above items were stolen from their home for which they filed the original crime report for. Mr. Taylor completed a voluntary statement.

Numerous credit cards were also located inside a duffel bag that Feaster was in possession of. The names on these cards were either Gennifer or Luis Mora. A records check revealed that Mr. and Mrs. Mora were the victims of a residential burglary under LVMPD event number 080528-2590. In that burglary, numerous items were stolen including a purse with numerous credit cards. Feaster was in possession of a total of 8 credit cards herein described:

1. Bank of America Visa, account #           issued to Gennifer Mora.
2. Home Design credit card, account #         , issued to Luis Mora.
3. Mervyns credit card, account #            , issued to Gennifer Sarmiento (AKA Mora).
4. Bank of America Visa, account #            issued to Gennifer Mora.
5. Discover Card, account #              ____, Issued to Jennifer Mora.
6. Circuit City Visa, account #.          issued to Luis Mora.
7. Bank of America Visa, account #.        , issued to Luis Mora.
8. Discover Card, account #             , issued to Luis Mora.

### LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## DECLARATION OF ARREST CONTINUATION
### Page 3

ID#: __1220271__                                      EVENT: __080612-0700__

These listed credit cards were stolen, and according to Gennifer Mora, no one had permission to be in possession of the cards. Mrs. Mora also responded to the detective's office to take custody of the cards. She too completed a voluntary statement.

I then responded to the Clark County Detention Center to book Feaster. I made contact with Feaster in an interview room. I explained to Feaster his Miranda rights. Feaster agreed to speak with me. I first confirmed that Feaster lived in the room with the deadbolt. Feaster confirmed that he did live in the room and payed rent for it. I asked Feaster if he owned the home, and he said he did not. I explained to Feaster why I was there, and that I was investigating a burglary that had occurred on 4103 E. Colorado around May 22nd 2008. Initially, Feaster denied committing any burglary. I used a ruse, and told Feaster that crime scene investigators had recovered his fingerprints and DNA at the scene. I told Feaster that his body shed millions of DNA cells every few minutes and that we had recovered his DNA inside the home. At this point, Feaster admitted he knew what I was talking about. Feaster told me that he and another subject he knows from the streets approached this residence on May 22nd 2008 around 1100 hrs. Feaster claims the suspect he was with entered the backyard, and broke out several windows to gain entry to the home. This corroborates the method of entry in the initial crime report, and also the victims statement that they broke out several windows. Feaster claims that once the other suspect broke into the residence, he opened the front door and Feaster entered the residence. Feaster claims he stole several boxes of hypodermic needles, some gold chains, a mens pocket watch, and several other items that he could not specifically remember. Feaster claims the other suspect stole the violin that was in the case, but after they were unable to pawn it, Feaster kept it for himself.

I asked Feaster about the credit cards that we located in the bag that was in his room that belonged to Mr. and Mrs. Mora. According to Feaster, he did not know where the bags came from, and thinks they may have been from the previous roommate who used to rent the room before Feaster did.

During the interview, Feaster, who was very cooperative admitted to me that he is addicted to methamphetamine. Feaster said he uses hypodermic devices to inject the drug. Feaster admitted he has made many bad choices in his life and was sorry for breaking into the residence. Feaster claims he has a high school diploma and attended community college classes for computer technology, which was his career plans up until he became a methamphetamine addict.

It should also be noted that the beginning of the interview was recorded, but after a few minutes, Feaster asked that the recorder be turned off. I complied with his request. Detective Esmeralda Marquez P# 7851 was present throughout the interview.

Based on the fact that Feaster entered the residence located at 4103 E. Colorado with the intent to commit a larceny, he was booked for burglary.

Based on the fact that Feaster entered the residence located at 4103 E. Colorado without permission of the owner, where entry resulted in damage to the structure, he was booked for home invasion.

Based on the fact that Feaster conspired with another person to commit a burglary, he was booked for conspiracy to commit burglary.

LVMPD374 (Rev. 2/00) · AUTOMATED/WP12

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## DECLARATION OF ARREST CONTINUATION
### Page 4

ID#: __1220271__

EVENT: __080612-0700__

Based on the fact that Feaster was in possession of stolen property, valued at $1011.98, he was booked for possession of stolen property

Based on the fact that Feaster did steal, take, or carry away property of another with the intent to deprive the owner permanently thereof, goods valued over $250, he was booked for grand larceny.

Based on the fact that Feaster was in possession of 8 stolen credit cards, without permission of the owner, he was booked on 8 counts of possession of credit card without owners consent.

Wherefore, Declarant prays that a finding be made by a magistrate that probable cause exists to hold said person for preliminary hearing (if charges are a felony or gross misdemeanor) or for trial (if charges are misdemeanor).

Declarant _____ 7417

DETECTIVE ANTHONY PACKE

UN 1 3

L9930R

08F12153X - SEASTER, BRUCE          Page 9 of 49

LAS VEGAS METROPOLITAN POLICE DEPARTMENT   *08F12153X-/01*

## ARREST REPORT

| | City | X | County | X | Adult | | Juvenile | Sector/Beat | G4 |
|---|---|---|---|---|---|---|---|---|---|

| ID/EVENT#<br>1220271 | ARRESTEE'S NAME<br>FEASTER, BRUCE | (Last, First, Middle) | | S.S.# |
|---|---|---|---|---|

| ARRESTEE'S ADDRESS | (Number, Street, City, State, Zip Code) |
|---|---|
| 4950 IMPERIAL STREET, LAS VEGAS, NEVADA 89110 | |

| CHARGES: | BURGLARY, NRS 205.060<br>HOME INVASION, NRS 205.067<br>CONSPIRACY TO COMMIT BURGLARY, NRS 205.060<br>POSSESSION OF STOLEN PROPERTY, NRS 205.275<br>GRAND LARCENY, NRS 205.220<br>EIGHT COUNTS OF POSSESSION OF A CREDIT CARD WITHOUT OWNER'S CONSENT, NRS 205.690 |
|---|---|

| OCCURRED: | DATE<br>06/12/08 | DAY OF WEEK<br>THURSDAY | TIME<br>1100 HRS | LOCATION OF ARREST (Number, Street, City, State, Zip Code)<br>4950 IMPERIAL, LAS VEGAS, NEVADA 89110 |
|---|---|---|---|---|

| RACE | SEX | D.O.B. | HT | WT | HAIR | EYES | PLACE OF BIRTH |
|---|---|---|---|---|---|---|---|
| B | M | 06/24/77 | 5'7" | 150 | BLACK | BRO | LAS VEGAS, NEVADA |

**CIRCUMSTANCES OF ARREST**

OFFICERS INVOLVED:

Detective A. Packe, P#7417
Detective E. Marquez, P#7851
Officer E. Prunchak, P#6180
Officer J. Ballinger, P#12900
Officer D. Green, P#6881
Officer A. Medina, P#6536

VICTIMS:

Marilyn and Raymond Taylor
4103 East Colorado Avenue
Las Vegas, Nevada 89104
Phone:

Luis and Gennifer Mora
306 Wandesforde Lane
Las Vegas, Nevada 89110

EVIDENCE RECOVERED:

A Colibri, silver, pocket watch, with an
owner-applied number of RST, May 27, 2005

Seven keys on a ring

A brown wallet with miscellaneous business cards

An Albert A. Marcourt violin in case with two bows

Miscellaneous jewelry

| ARRESTING OFFICER(S) | P# | APPROVED BY | CONNECTING RPTS. (Type or Event Number) |
|---|---|---|---|
| A. PACKE | 7417 | Lt. Wayne Holman<br>6-13-08 0515 Hours | 080612-0700<br>080522-2724<br>080528-2590<br>PROPERTY REPORT, VOLUNTARY<br>STATEMENTS, REQUEST FOR PROSECUTION,<br>WITNESS LIST, TCR |

LVMPD 602 (REV. 12-90) • AUTOMATED

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## CONTINUATION REPORT

ID/Event Number:    1220271

them back to the Northeast Area Command Property Crimes Office.  Feaster was transported to the Clark County Detention Center, pending booking.

A records check was conducted on the name of Raymond Scott Taylor that was located on the hypodermic needle boxes. I discovered that Mr. Taylor and his wife were the victims of a residential burglary under LVMPD event #080522-2724. That report listed numerous items, including a violin and its case, as stolen. According to the report, the violin was valued at $500.00. The violin case was valued at $125.00. Two horsehair bows used to play the instrument were valued at $200.00.  The boxes of hypodermic needles were valued at $111.96.  Finally, a Colibri men's pocket watch was valued at $75.00.  Total amount of stolen property that Feaster was in possession of totaled $1,011.96.

Mr. and Mrs. Taylor responded to the office to take custody of their items.  They confirmed the above items were stolen from their home, for which they filed the original crime report for.  Mr. Taylor completed a voluntary statement.

Numerous credit cards were also located inside a duffle bag that Feaster was in possession of. The names on these cards bore either Gennifer or Luis Mora. A records check revealed that Mr. and Mrs. Mora were the victims of a residential burglary under LVMPD event #080528-2590.

In that burglary, numerous items were stolen, including a purse with numerous credit cards. Feaster was in possession of a total of eight credit cards herein described: 1) A Bank of America Visa, bearing the name of Gennifer Mora; 2) a Home Design credit card, bearing the name Luis Mora; 3) A Mervyn's credit card, bearing the name Gennifer Sarmiento, aka Mora; 4) Bank of America Visa, bearing the name Gennifer Mora; 5) A Discover card, bearing the name Gennifer Mora; 6) A Circuit City Visa, bearing the name Luis Mora; 7) A Bank of America Visa, bearing the name Luis Mora; 8) A Discover card, bearing the name Luis Mora.  These listed credit cards were stolen, and according to Gennifer Mora, no one had permission to be in possession of the cards.

Mrs. Mora also responded to the Detectives Office to take custody of the cards. She, too, completed a voluntary statement.

I then responded to the Clark County Detention Center to book Feaster. I made contact with Feaster in an interview room.  I explained to Feaster his Miranda rights.  Feaster agreed to speak with me.

I first confirmed that Feaster lived in the room with the deadbolt. Feaster confirmed that he did live in the room and paid rent for it. I asked Feaster if he owned the home, and he said he did not.

I explained to Feaster why I was there, and that I was investigating a burglary that had occurred on 4103 East Colorado, around May 22, 2008.  Initially, Feaster denied committing any burglary. I used a ruse and told Feaster that crime scene investigators had recovered his fingerprints and DNA at the scene. I told Feaster that his body shed millions of DNA cells every few minutes, and that we had recovered his DNA inside the home. At this point, Feaster admitted he knew what I was talking about.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## CONTINUATION REPORT

ID/Event Number: 1220271          **Page 5 of 6**

Feaster told me that he and another subject he knows from the streets approached this residence on May 22, 2008, around 1100 hours. Feaster claims the suspect he was with entered the backyard and broke out several windows to gain entry into the home. This corroborates the method of entry in the initial crime report and also the victim's statement that they broke out several windows.

Feaster claims that once the other suspect broke into the residence, he opened the front door, and Feaster then entered the residence. Feaster claims he stole several boxes of hypodermic needles, some gold chains, a men's pocket watch, and several other items that he could not specifically remember. Feaster claims the other suspect stole the violin that was in the case, but after they were unable to pawn it later that day, Feaster kept it for himself.

I asked Feaster about the credit cards that we located in the bag that was in his room that belonged to Mr. and Mrs. Mora. According to Feaster, he did not know where the bags came from and thinks they may have been from the previous roommate who used to rent the room before Feaster did.

During the interview, Feaster, who was very cooperative, admitted to me that he is addicted to methamphetamine. Feaster said he uses hypodermic devices to inject the drug, and Feaster admitted he has made many bad decisions in his life and was sorry for breaking into the residence. Feaster claims he has a high school diploma and attended Community College classes for computer technology, which was his career plans up until he became a methamphetamine addict.

It should also be noted that the beginning of the interview was recorded by myself, but after a few minutes, Feaster asked that the recorder be turned off. I complied with Mr. Feaster's request. Detective E. Marquez, P#7851, was present throughout the interview.
Based on the fact that Feaster entered the residence located at 4103 East Colorado with the intent to commit a larceny, he was booked for burglary. Based on the fact that Feaster entered the residence located at 4103 East Colorado without permission of the owner, where entry resulted in damage to the structure, he was booked for home invasion. Based on the fact that Feaster conspired with another person to commit a felony burglary, he was booked for conspiracy to commit burglary. Based on the fact Feaster was in possession of stolen property valued at $1,011.96, he was booked for possession of stolen property. Based on the fact Feaster did steal, take, or carry away property of another with the intent to deprive the owner permanently thereof, goods valued over $250.00, he was booked for grand larceny. Finally, based on the fact that Feaster was in possession of eight stolen credit cards with numbers attached without permission of the owner, he was booked on eight counts of possession of a credit card without owner's consent.

AP/mad (Records)
Job# 103910
Date & Time Dictated: 06/12/08 1934 hours
Date & Time Transcribed: 06/12/08 2236 hours

cc:   Detective A. Packe/NE29
      Sergeant M. Pence/NE29

Exhibit #2

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## CONSENT TO SEARCH CARD

Date: 6/12/08                     Event #: 0806 12-0700

I, BRUCE, SEASTER _____, having been informed of my right not to have a search made of the premises/property listed hereafter without a search warrant issued by a court of jurisdiction, and of my right to refuse to consent to a search for items directly or indirectly related to the investigation of

do hereby voluntarily consent to a search of Address/Description
4980 IMPERIAL, LAS VEGAS NV (BEDROOM OF SEASTER)
for the following: NARCOTICS / PARAPHER NALIA

Signature: _____        Witness: _____
LVMPD 79 A (REV. 10-86)

08F12153X - SEASTER. BRUCE          Page 16 of 49

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
# CONTINUATION REPORT

**ID/Event Number:**     **1220271**                                        **Page 6 of 6**

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## CONTINUATION REPORT

ID/Event Number:     1220271

The above items were released to victims,
Raymond and Marilyn Taylor at the
Northeast Area Command's Substation.

### ADDITIONAL EVIDENCE
### RECOVERED:

name
it City

ng the
2;
name
andon
me
n's
iento,
aring

e Luis

Several IDs bearing the name of Luis Mora

A car key for a Mitsubishi

A red jewelry box

The above items belong to victims
Luis and Gennifer Mora.

### DETAILS:

On May 22, 2008, victims Raymond and Marilyn Taylor notified the LVMPD, alleging that
a residential burglary at their home had occurred earlier that day. According to the victims,
numerous items were stolen, including jewelry, electronics, a violin in its case, and
hypodermic needles used for insulin injections. LVMPD patrol officers responded to the
scene and conducted the initial investigation, which was documented on a crime report
under event #080522-2724. After the initial investigation, the case was suspended, as all
investigative leads were exhausted.

Then on June 12, 2008, LVMPD dispatch received a call from a citizen at 4950 Imperial
Street, Las Vegas, Nevada, 89110. The caller was reporting a verbal domestic quarrel
between her and an ex-boyfriend. Patrol Officer E. Prunchak, P#6180, and Officer J.
Ballinger, P#12900, were dispatched to the scene.

Upon arrival, they made contact with numerous occupants inside of the home. All subjects
in the home, including Bruce Feaster, were identified. Feaster was unrelated to the

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
## CONTINUATION REPORT

ID/Event Number:   1220271                                                    Page 3 of 6

domestic argument, but it was determined that Feaster resided in a room inside the home. Officers Prunchak and Ballinger then left the residence to make contact with another party just several blocks away.

After leaving the residence, Officers Prunchak and Ballinger received a delayed warrant hit from the Las Vegas Municipal Court for Bruce Feaster. Both officers returned to 4950 Imperial Street to arrest him. They again made contact with Feaster once inside the residence. They placed Feaster under arrest for the warrant and placed him into handcuffs.

Officer Prunchak confirmed with Feaster that he rented a room within the residence and was not the owner of the home. Officer Prunchak noted that the door to Feaster's room was locked with a deadbolt. Officer Prunchak asked Feaster if he had a key for his room. Feaster replied to Officer Prunchak that he had accidentally left the key in a friend's car the night before.

While Officer Prunchak was having this conversation with Feaster, the homeowner handed Officer Prunchak Feaster's actual key chain. When Officer Prunchak confronted Feaster with this information, he admitted he had lied about the key. Officer Prunchak asked Feaster if there were any items in his room that he should not have. Feaster admitted to Officer Prunchak that there were possible paraphernalia items in the room.

Officer Prunchak assured Feaster that he was not concerned with drug paraphernalia items and asked Feaster for consent to search his room. Feaster agreed to a search of his room. Feaster had one hand freed from the handcuff and signed a consent to search card prior to the search. Officers Prunchak and Ballinger then entered into Feaster's room and began to search.

As the search progressed, both officers began to find numerous jewelry items. They also observed bags that contained identification cards and credit cards in the names of other people. Much of the jewelry was in drawers from jewelry boxes; however, there were no jewelry boxes located in the room. According to Officer Prunchak, it appeared as though someone had just grabbed drawers out of jewelry boxes as they walked by them, leaving the jewelry boxes behind.

Both officers also located various electronics, including an iPod Shuffle, numerous cell phones, computer hard drives, homeowner loan documents, several boxes of prescription hypodermic needles bearing the name of Raymond Scott Taylor, checks, wallets, and numerous bags containing the above items. Based on their training and experience, Officers Prunchak and Ballinger believed these items were stolen from others, and it was indeed stolen property.

Officers also obtained consent from the homeowner, who identified herself as Anne Treat, for permission to check the rest of the house and curtilage. A violin in a hard case was located in the trailer in the backyard of the residence. Ms. Treat claimed she did not know who owned it, and that no one in the home played the violin. Officers Prunchak and Ballinger then seized the items from Feaster's room, along with the violin, and transported

*Anne Treat is not the home owner* (handwritten)